UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLGA G. ORTIZ and PATRICK SOTO,

    Plaintiffs,

   v.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

    Defendant.

_____/

NO. CIV. S-08-1326 LKK GGH

O R D E R

Plaintiffs are two employees of the United States Postal Service who have brought suit against defendant, the Postmaster General, for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., and the Rehabilitation Act, 29 U.S.C. §§ 701 et seq. Pending before the court is the defendant's motion to sever the plaintiffs' claims. The court resolves the motion on the papers and after oral argument.

////

////

1

# I. ALLEGATIONS OF THE COMPLAINT[1]

Plaintiffs are employed by the United States Postal Service, of which defendant is Postmaster General. Their suit concerns allegedly discriminatory actions taken against them by their respective supervisors from 2002 to 2008.

## A. Allegations of Plaintiff Ortiz

Plaintiff Ortiz is a Postal employee. In 1995, she alleges she had suffered injuries in a work-related accident that limited her physical activities. In 2006 and 2007, she alleged that she also suffered from physical conditions or illnesses limiting her ability to work.

From 2001 to June 2007, Ortiz's direct supervisor was Richard Matsuhiro at the Stockton Main Post Office. She alleges that during that period he made racially offensive comments to her. She also alleges that he made sexually inappropriate remarks and subjected her to unwelcome sexual touching. She alleges that he yelled and was abusive towards her, which he did not do towards non-disabled employees.

From 2004 to 2007, Ortiz alleges that she also performed duties at the Hammar Ranch Post Office, under the direct supervision of Josie Orozco.

In June 2007, Ortiz filed a complaint with the Equal Employment Office of the United States Postal Service, alleging discrimination based on her race and disability. Three days later,

---

[1] The allegations derive from the Third Amended Complaint and are taken as true for the purposes of this motion only.

she discovered that all of her job duties had been reassigned to another employee. That afternoon, she met with Postmaster Dino Marsango at his request. According to plaintiff, he told her that his boss, Bobbi Riley, Manager of Post Office Operations, had instructed him to reassign plaintiff Ortiz from the administrative office to the workroom floor. Riley allegedly also told him that if Ortiz worked in the back office, the blinds should be left open so that Riley could observe her as she worked.

The next month, Ortiz was assigned to a new position at the Stockton Post Office. Less that a week later, she was informed there was no more work for her at that Post Office and she was again reassigned to the East Stockton Station. For three weeks she performed clerk duties at that station. She was then told by her supervisor that Riley had instructed him to strip Ortiz of all of her job duties and assign her to sit in the break room for her entire shift. She did this from August 2007 to April 2008, each day being told there was no work for her to do.

In September 2007, she filed a second EEO complaint, alleging retaliation and discrimination and harassment based on race, sex, and physical disability. In April 2008, plaintiff received a new supervisor at the East Stockton Station who reinstated some of plaintiff's previous job duties.

Plaintiff Ortiz has brought suit under Title VII for sexual and racial harassment and under the Rehabilitation Act for disability discrimination, failure to provide reasonable accommodation, and failure to engage in the interactive process.

3

She has brought suit under both statutes for retaliation.

**B.   Allegations of Plaintiff Soto**

Plaintiff Soto has been a letter carrier at the Hammer Ranch Post Office since 1990. In 1994, she suffered work-related injuries and in 1996 was placed on limited duty status. From 2005 to 2008, her direct supervisor was Karen North, who indirectly reported to Josie Orozco. For the latter part of 2007, plaintiff Soto's direct supervisor was also Carlos Buenrostro.

In February 2007, she alleges that she overheard a conversation between Riley and Orozco in which the former stated that investigating an EEO complaint cost the Post Office seven thousand dollars, which plaintiff understood to be discouragement of the filing of such complaints. Plaintiff Soto alleges that from March to August 2007, Orozco instructed North to report plaintiff as having "no work available," while she was in fact performing her job duties.

In July 2007, Riley allegedly stated to Orozco and others in a telephone conference,

> I want to know who all the ill and injured employees are now! You need to get started on this now! If they are not productive, we need to start the process of getting them out of here. They can go sit on their butts somewhere else and do nothing.

The next month, Orozco told plaintiff Soto that she was stripped of her job duties and would sit in the conference room during her shift. This continued from August to December 2007. Throughout this time, plaintiff asked for work but was usually rebuffed by Orozco, Buenrosto, and North. She alleges that she was subject to degrading

4

comments from other employees during this time. Plaintiff Soto alleges that no other disabled employee was treated that way, except plaintiff Ortiz. In September 2007, she filed an EEO complaint for disability discrimination and harassment.

In December 2007, she was placed on administrative leave for allegedly misrepresenting her disability work restrictions. In Janaury 2008 she filed another EEO complaint for discrimination, harassment, and retaliation. In March 2008, she returned to work. She was immediately stripped of all work duties by Orozco and told to sit in a storage room during her shift. She had also been subject to demeaning and derogatory comments. In June 2008, she filed another EEO complaint.

Like plaintiff Ortiz, plaintiff Soto has brought suit under the Rehabilitation Act for disability discrimination, failure to provide reasonable accommodation, failure to engage in the interactive process, and retaliation. She has also brought suit under the Rehabilitation Act for harassment based on physical disability.

**C.  Plaintiffs' Initial Disclosures**

Defendant has tendered plaintiffs' initial disclosures under Federal Rule of Civil Procedure 26. Plaintiffs identify thirty-one individuals as possibly having discoverable information. These include all of the Postal Service personnel identified herein. They also include fourteen individuals stated to have observed events forming the basis of plaintiff Ortiz's claims and four individuals stated to have observed events forming the basis of plaintiff's

5

Soto's claims. One of the persons identified for Ortiz is an individual alleging that Matsuhiro attempted to rape her. Plaintiff Ortiz has also identified three people having knowledge of her disability. Plaintiff Soto has also identified two people who have knowledge relevant to her claim for damages.

## II. STANDARD FOR PERMISSIVE JOINDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 20

Under Federal Rule of Civil Procedure 20, joinder is proper if (1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000) cert. denied Gentile v. Quaker Oats Co., 533 U.S. 950 (2001); Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). Even if these requirements are met, a district court must also examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side. Desert Bank, 623 F.2d at 1375. Under Rule 20(b), the district court may sever the trial in order to avoid prejudice. See Fed. R. Civ. P. 20(b). Factors the court should consider in evaluating the fairness of permitting joinder include possible prejudice to any of the parties, delay, motive of the moving party in seeking joinder, closeness between the joined parties, and the effect of the joinder on the court's jurisdiction. Desert Bank, 623 F.2d at 1375. "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to

the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).[2]

### III. ANALYSIS

Defendant contends that joinder of the plaintiffs' claims is improper under Rule 20(a) because the claims do not arise out of the same transaction and occurrence and because there is no question of law or fact common to them. Defendant also contends that plaintiffs' claims should be severed due to the possibility of prejudice to the defendant and jury confusion. The court considers each of these arguments in turn.

**A. Rule 20 Factors**

Rule 20 permits joinder of plaintiffs if "(A) they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Courts have held that the first element is met where there is a "logical relationship" between the claims, Pena v. McArthur, 889 F. Supp. 403, 405(E.D. Cal. 1994), although "[a]bsolute identity of all events is unnecessary." Mosley v. Gen. Motors Group, 497 F.2d 1330, 1333 (8th Cir. 1974). Although plaintiffs' claims may arise under the same general law, the second element of

---

[2] Indeed, in this court, there is yet another reason. This court has the highest number of weighted cases per active judge in the United States. According to the Administrative Office that number is 1004. The second highest is Minnesota with 821. Under the circumstances, one trial is almost imperative.

7

Rule 20 is not satisfied unless there are specific legal questions common among the plaintiffs. See Coughlin v. Rogers, 130 F.3d 1348, 1352 (9th Cir. 1997) (that all the plaintiffs' claims arise under the California constitution and Administrative Procedures Act does not demonstrate a common question of law).

In applying these principles to claims brought by multiple plaintiffs, courts have reached varying results such that no bright line is apparent as to when Rule 20 joinder should be permitted. For instance, in Coughlin, the plaintiffs were 49 individuals alleging that defendant Immigration and Naturalization Service failed to timely adjudicate their respective petitions. 130 F.3d at 1349-50. The court identified six distinct general bases for the various plaintiffs' claims. Id. The only commonality among the claims was defendants' alleged untimeliness in adjudicating petitions, but "[e]ach Plaintiff has waited a different length of time, suffering a different duration of alleged delay[,] . . .the delay is disputed in some instances and varies from case to case, [and] . . . there may be numerous reasons for the alleged delay." Id. at 1350. Plaintiffs had not alleged a pattern or practice of delay by INS. Id. As such, the first element of Rule 20 had not been met. Id. The second element was not met either, as "each category of Plaintiffs has filed different applications, petitions, or forms. Therefore, the INS must apply different legal standards to each type of application or petition." Id. at 1351. Accordingly, the district court concluded that Rule 20's requirements had not been met, which the Circuit court affirmed. Id. at 1351-52; see

also Sheets v. CTS Wireless Components, Inc., 213 F. Supp. 2d 1279, 1286-87 (D.N.M. 2002) (severance of ADA claims proper as they did not arise out of the same transaction and occurrence because the plaintiffs "were each discharged at different times for allegedly different reasons and under different circumstances" and they had not alleged a policy of discrimination).

In contrast, in Mosley, plaintiffs were ten African-American employees of defendant who alleged racial discrimination in violation of Title VII. 497 F.2d at 1331. The Eighth Circuit reversed the district court's ruling that the plaintiffs be severed, finding that the elements of Rule 20 had been met. Id. at 1334.[3] It concluded that plaintiffs had adequately alleged that their claims arose from the same transaction or occurrence, as each plaintiff had alleged "that he had been injured by the same general policy of discrimination" by the defendant. Id. at 1333. It concluded that the plaintiffs had met the second element of Rule 20 as well, because "[t]he discriminatory character of the defendants' conduct is thus basic to each plaintiff's recovery" even if each plaintiff suffered different effects of that policy. Id.; see also Biglow v. Boeing Co., 201 F.R.D. 519, 520 (D. Kan. 2001) (employees' Title VII claims properly joined under Rule 20 as they alleged a policy and practice of racial discrimination); King v. Pepsi Cola Metro. Bottling Co., 86 F.R.D. 4, 5-6 (E.D. Pa. 1979)

---

[3]This opinion has been cited with approval by the Ninth Circuit. See League to Save Lake Tahoe v. Tahoe Reg'l Planning Agenvy, 558 F.2d 914 (9th Cir. 1977).

9

(same).

Here, the degree of commonality of the plaintiffs' allegations is less clear than that of any of these cases. Plaintiffs worked at different post offices and had different direct supervisors.[4] Many of Ortiz's allegations involve racial discrimination and sexual impropriety, which are absent from Soto's claims. The plaintiffs have not expressly pled that there was a policy of the defendant's that was the driving force behind the events that they described in the complaint.

On the other hand, there are common factual allegations between the plaintiffs' claims. Plaintiffs both worked at post offices in the Stockton, California area. Both were apparently under the authority of Bobbi Riley, at least to some extent. Both plaintiffs had physical limitations that inhibited their abilities to perform work duties. Within a few months of each other, both plaintiffs allegedly had their work duties stripped from them. Both have alleged that there was evidence that this decision had been made or promulgated by Riley. In Ortiz's case, she has alleged that her supervisor told her that he had been ordered to strip her of her job duties by Riley. In Soto's case, she alleges that shortly before she was relieved of her job duties, she overheard Riley telling Soto's supervisor that they needed to "start the process of

---

[4] Although plaintiff Ortiz alleges that she worked at the Hammar Ranch Post Office under the direct supervision of Josie Orozco from 2004 to 2007, none of her allegations of discrimination or harassment arise from events at that location or otherwise appear to involve Orozco.

10

getting [injured employees] out of here." TAC ¶ 44. Furthermore, both plaintiffs alleged having been stripped of their job duties shortly after filing EEO complaints. See TAC ¶¶ 27-28, 53-54.

Considering all of the factual allegations, the court is persuaded that the Rule 20 factors have been met. First, plaintiffs' allegations arise from conduct by some of the same people, in the same geographical are, and which occurred within the same general time frame. These similarities militate towards joinder. See King, 86 F.R.D. at 6; Sheets, 213 F. Supp. 2d at 1286-87.

Second, although plaintiffs have not expressly pled that there was a policy of disability discrimination that caused the harms for which they seek redress, an allegation of such a policy can be reasonably inferred from the complaint.[5] The plaintiff have alleged that Riley, to whom each of plaintiff's supervisors reported, expressed hostility towards certain disabled employees and directed her staff to take actions against those employees. Although plaintiff Soto has alleged that "other letter carriers on modified duty . . . were treated more favorably" than she was, she also alleges that she was "treated in [a] manner similar to Plaintiff Ortiz." TAC ¶ 47. Viewed in the light most favorably to plaintiffs,

---

[5] Despite defendant's suggestion, the Ninth Circuit appears never to have held that plaintiffs' pleadings must expressly state that there was a policy in place in order for Rule 20 joinder to the proper on this basis. Cf. League to Save Lake Tahoe, 558 F.2d at 917 (Rule 20 requirements met apparently based on the inference of a common policy from other factual allegations in the complaint). Moreover, the hearsay concerns that defendant raises are not compelling at this stage of the proceedings.

this appears to allege a policy that may have only been selectively applied. It nevertheless alleges a factually commonality between the two plaintiffs' claims. Thus, plaintiffs' allegations arise from the same transaction and occurrence because they both have alleged injuries arising from a policy of discrimination promulgated by Riley. In this way, their allegations resemble those of the plaintiffs in <u>Mosley</u>, <u>Biglow</u>, and <u>King</u>, where the Rule 20 factors were held to have been met.

This demonstrates common questions of law and fact, as well, as both plaintiffs' recovery under the Rehabilitation Act appears to rely on evidence that they suffered disability discrimination due to directives from Riley to their respective supervisors. As such, plaintiffs present a similar, narrow legal question; it is not the case that they are invoking merely the same "general law." <u>See</u> <u>Coughlin</u>, 130 F.3d at 1352.

For these reasons, the court concludes that plaintiffs' allegations demonstrate that their claims arise out of the same transaction or occurrence and have significant questions of law and fact in common. <u>See</u> Fed. R. Civ. P. 20.

**B. Prudential Concerns**

Defendant argues that even if Rule 20's factors have been met, the court should sever the plaintiffs' claims due to the likelihood of prejudice to defendant and confusion of the jury. Under Circuit precedent, these are proper considerations for the court,

////

////

notwithstanding the Rule 20 elements being present.[6] See Coleman, 232 F.3d at 1296; Desert Empire Bank, 623 F.2d at 1375.

Courts have offered some guidance as to when severance is appropriate due to the possibility of prejudice to the defendant or jury confusion. In Coleman, the Ninth Circuit affirmed the district court's severance of the plaintiffs' claims based on these concerns. 232 F.3d at 1296-97. In that case, plaintiffs were ten employees of defendant who brought claims of age discrimination. Id. at 1277. At the summary judgment stage, defendant also moved to sever. Id. at 1296. The district court found that both elements of Rule 20 had been met. Id. It also found, however, that the defendant would be prejudiced by having all of the plaintiffs testify against it at trial. Id., citing Moorhouse v. Boeing Co., 501 F. Supp. 390, 393 n. 4 (E.D. Pa. 1980) ("even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant laid him off because of his age").

The court also found a significant danger of jury confusion. Id. at 1296. The jury would have been required to keep track of the employment history and defendant's reasons for terminating each of the ten plaintiffs, which would include testimony by each employee's supervisors. Id. Moreover, the employees were spread across six states and so the jury would have had to evaluate

---

[6] On this basis, several of the cases relied on by plaintiffs are distinguishable, as they are out of circuit cases that did not consider these prudential factors. See Mosley, 497 F.2d 1330; King, 86 F.R.D. 4.

plaintiffs' state law claims in light of the law of the relevant state. Id. Finally, there was minimal duplicative discovery among the claims, rendering insignificant the gains in judicial economy in light of the confusion and prejudice that joinder would cause. Id. at 1296-97; see also Grayson v. K-Mart Corp., 849 F. Supp. 785, 789 (N.D. Ga. 1994) (in ADEA suit brought by eleven plaintiffs severance was proper because Rule 20 factors not met and there was a "tremendous danger that one or two plaintiffs' unique circumstances could bias the jury against the defendant").

Here, the question of whether there may be prejudice to the defendant and jury confusion is a difficult one. The possibility of prejudice appears at this stage of the proceedings to be appreciable. Each plaintiff has alleged facts that may affect the jury's ability to neutrally evaluate the merits of the claims of the other. Plaintiff Ortiz has alleged incidents of sexual harassment and inappropriateness that could inflame a jury. To support these allegations, she has identified in her Rule 26 disclosures an individual who asserts that Ortiz's supervisor attempted to rape her. That testimony could possibly affect a jury's consideration of Soto's case. Furthermore, plaintiff Ortiz has alleged racial discrimination that is absent from Soto's claims and could also prejudice the defendant in defending against the claims of the latter. Similarly, Soto has alleged that she was subject to harassing and derogatory comments from other Post Office staff after her job duties were stripped, which Ortiz does not allege and which may prejudice defendant in defending against

14

Ortiz's claims. It is quite possible that the inflammatory nature of any or all of this evidence could not realistically be cured by a limiting instruction.[7]

In cases where courts have found jury confusion militates against joinder of plaintiffs' claims, there have been more than two plaintiffs and the cases have been more factually complicated. For example, Coleman involved ten plaintiffs across six states and Grayson involved eleven plaintiffs in four states. See Coleman, 232 F.3d at 1296; Grayson, 849 F. Supp. at 790. Here, there are only two plaintiffs who allege that one manager, Bobbi Riley, promulgated a policy of discrimination that affected both of them. Although there will be evidentiary differences between the plaintiffs' claims, they do not appear of the magnitude faced by the Coleman and Grayson courts. At this stage of the proceedings, however, it is difficult to predict the degree of overlap between the plaintiffs' evidence and the amount of distinct evidence the jury will be required to evaluate. In this way, Coleman is particularly distinguishable, as there the motion to sever was granted at the summary judgment stage, when the court had better knowledge of the evidence to be marshaled at trial.

Therefore, court is led to the conclusion that severance is premature. Defendant has raised serious concerns about the possibility of prejudice if plaintiffs' claims are allowed to proceed jointly. However, given that the case is in its early

---

[7]Arguably, there is also some possibility of jury confusion.

15

stages, the court cannot conclude that these concerns will in fact manifest themselves or otherwise outweigh the court's other concerns. Because the Rule 20 elements are present and heeding the High Court's directive that joinder should be liberally allowed, Gibbs, 383 U.S. at 724, the prudential concerns raised by defendants are not yet sufficiently compelling to warrant severance. Defendants may renew their motion at a later stage in the proceedings, when the court may better evaluate the likelihood that prejudice and confusion will result from plaintiffs' evidence at trial.

**IV. CONCLUSION**

For the reasons stated herein, defendants' Motion to Sever is DENIED without prejudice.

IT IS SO ORDERED.

DATED: May 11, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT