IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLGA G. ORTIZ and PATRICIA SOTO,

    Plaintiffs,                        No. 2:08-cv-01326 LKK KJN

    vs.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

    Defendant.                      <u>ORDER</u>

_____/

        Presently before the court is defendant's motion seeking an order compelling plaintiffs Olga Ortiz and Patricia Soto to each attend and undergo a mental examination pursuant to Federal Rule of Civil Procedure 35(a).[1] (Dkt. No. 30.) The court heard this matter on its law and motion calendar on March 4, 2010.[2] Assistant United States Attorney Jason S. Ehrlinspiel appeared on behalf of defendant. Attorney Jeremy A. Graham appeared on behalf of plaintiffs. For the reasons that follow, the court grants defendant's motion.

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 11, 2010 (Dkt. No. 31).

[2] This matter was heard at a specially set time of 2:00 p.m. The undersigned appreciates the party's accommodation of the court's schedule in this regard.

1

I. BACKGROUND

Plaintiffs Ortiz and Soto filed the operative Third Amended Complaint against defendant John Potter, Postmaster General of the U.S. Postal Service ("USPS"), which relates to their respective employment with USPS. (Dkt. No. 22.) Both plaintiffs allege violations of federal law as a result of conduct by their respective supervisors at USPS. The undersigned refers those interested in a more detailed history of this action and the allegations contained in the Third Amended Complaint to the court's order denying defendant's motion to sever. (Dkt. No. 29.)

With respect to Ortiz, the Third Amended Complaint alleges claims for: sexual harassment in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); racial harassment in violation of Title VII; disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.* ("Rehabilitation Act"); failure to provide reasonable accommodation in violation of the Rehabilitation Act; failure to engage in the interactive process in violation of the Rehabilitation Act; failure to give full consideration to placement and advancement in violation of the Rehabilitation Act; and retaliation in violation of Title VII and the Rehabilitation Act. (See Third Am. Compl. ¶¶ 55-95.)

As to Soto, the Third Amended Complaint alleges claims for: disability discrimination in violation of the Rehabilitation Act; failure to provide reasonable accommodation in violation of the Rehabilitation Act; failure to engage in the interactive process in violation of the Rehabilitation Act; harassment based on physical disability in violation of the Rehabilitation Act; failure to give full consideration to placement and advancement in violation of the Rehabilitation Act; and retaliation in violation of the Rehabilitation Act. (See Third Am. Compl. ¶¶ 96-132.)

The Third Amended Complaint contains allegations specifically related to plaintiffs' respective claims of emotional distress based on defendant's alleged unlawful conduct. Each claim for relief stated in the Third Amended Complaint separately alleges that "[a]s a

proximate result of Defendant's conduct, Plaintiff . . . has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof." (See Third Am. Compl. ¶¶ 58, 63, 69, 75, 81, 86, 94, 100, 106, 112, 119, 124, 131.) In addition, the prayer for relief in the Third Amended Complaint seeks, among other things, "damages for emotional distress, humiliation, and mental anguish on all causes of action." (Id. at 33:22-23.)

II.     LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The party seeking to compel the mental or physical examination bears the burden to demonstrate not only that the physical or mental condition of the person to be examined is "in controversy," but also that the motion is supported by "good cause."[3] Fed. R. Civ. P. 35(a)(2)(A); see also Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964). In Schlagenhauf, the United States Supreme Court stated that the "in controversy" and "good cause" requirements are not met by "mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Schlagenhauf, 379 U.S. at 118.

The good cause requirement has been described as requiring a "showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." Ragge v. MCA/Univeral Studios, 165 F.R.D. 605, 609 (C.D. Cal. 1995). Moreover, the Supreme Court has stated that "what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired

---

[3] The motion must also "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

information by other means is also relevant." Schlagenhauf, 379 U.S. at 118; accord Ragge, 165 F.R.D. at 609 ("'Good cause' is established by a showing that the defendant has no other method to discover relevant information; there is simply no less intrusive means" (citations and internal quotation marks omitted).).

Although the Ninth Circuit Court of Appeals has not addressed the "in controversy" requirement, the district court in Turner v. Imperial Stores, 161 F.R.D. 89 (S.D. Cal. 1995), announced a test that has been regularly applied by district courts. See, e.g., Azevedo v. City of Fresno, slip op., No. 1:09cv0375 AWI DLB, 2009 WL 5216877, *3 (E.D. Cal. Dec. 30, 2009); Kob v. County of Marin, slip op., No. C 07-2211 JL, 2009 WL 3706820, *1 (N.D. Cal. Nov. 3, 2009); Ford v. Contra Costa County, 179 F.R.D. 579, 580 (N.D. Cal. 1998).[4] Under the Turner test, a bare claim for emotional distress will not, by itself, support an order compelling a mental examination under Rule 35(a). See Turner, 161 F.R.D. at 97 (stating that the weight of authority establishes that "the moving party must show more than that the party in question has claimed emotional distress"); accord Bowen v. Parking Auth. of City of Camden, 214 F.R.D. 188, 194 (D.N.J. 2003). Instead, the Turner test requires the party seeking to compel the mental examination to demonstrate that the party to be examined has claimed emotional distress *and* the presence of one or more of the following with respect to the proposed examinee: (1) a claim for intentional or negligent infliction of emotional distress, (2) an allegation of a specific mental or psychiatric injury or disorder caused by the alleged conduct, (3) a claim of "unusually severe" emotional distress, (4) an intent to offer expert testimony regarding the claimed emotional distress, or (5) a concession that the mental condition is "in controversy" within the meaning of Federal Rule of Civil Procedure 35(a). See, e.g., Ford, 179 F.R.D. at 580 (citing Turner, 161 F.R.D. at 95).

---

[4] See also Nuskey v. Lambright, 251 F.R.D. 3, 7 (D.D.C. 2008) (referring to Turner as "the majority view"); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 528 F. Supp. 2d 303, 319 (S.D.N.Y. 2007) (referring to Turner as "often-cited"); Fox v. Gates Corp., 179 F.R.D. 303, 307 (D. Colo. 1998) (characterizing the Turner approach as in the majority).

1  Under Turner, "garden-variety" emotional distress is not sufficient alone to place a party's mental state in controversy because "Rule 35(a) was not meant to be applied in so broad a fashion as to allow courts to order a mental examination whenever a plaintiff claimed emotional distress." Tan v. City and County of San Francisco, slip op., No. C 08-01564 MEJ, 2009 WL 594238, *1 (N.D. Cal. Mar. 9, 2009) (citing Turner, 161 F.R.D. at 97); cf. Sabee v. United Bhd. of Carpenters & Joiners of Am., Local No. 33, 126 F.R.D. 422, 426 (D. Mass. 1989) (holding that plaintiff had not placed his mental condition at issue through his "'garden variety' claim of emotional distress" such that it effectuated a waiver of the psychotherapist-patient privilege). One district court has characterized garden-variety claims for emotional distress as "claims of generalized insult, hurt feelings, and lingering resentment" that "do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life." Javeed v. Covenant Med. Ctr., Inc., 218 F.R.D. 178, 179 (N.D. Iowa 2001).

Prior to Turner, the Northern District of California had produced the only published decision in this Circuit addressing the "in controversy" requirement of Rule 35(a), and ordered a mental examination based solely on plaintiff's claim of emotional distress. See Smedley v. Capps, Staples, Ward, Hastings & Dodson, 820 F. Supp. 1227, 1232 (N.D. Cal. 1993) (holding that although plaintiff maintained that she did not intend to present expert testimony at trial or to seek damages for incurred medical expenses, defendants were entitled to an order compelling a mental examination where plaintiff intended to "present evidence of 'normal' emotional distress"). District courts, including the Northern District, have declined to follow Smedley on the grounds that its holding is unsupported by authority or significant discussion and would "subject innumerable plaintiffs to mandatory yet unnecessary psychiatric examinations." Ford, 179 F.R.D. at 580; see also Turner, 161 F.R.D. at 93; Fox, 179 F.R.D. at 307 (characterizing Smedley as supporting a minority view).

The undersigned agrees with those district courts that have declined to apply the

rule from Smedley and concludes that the rule from Turner, arrived at after a thorough analysis of the relevant case law, provides a persuasive and sound rule for most cases.[5] The Turner rule adequately balances the intended liberal construction of Rule 35 in favor of granting examinations, see Postell v. Amana Refrigeration, Inc., 87 F.R.D. 706, 707 (D.C. Ga. 1980), with the right of the party to be examined to avoid unnecessary personal invasions. See Curtis v. Express, Inc., 868 F. Supp. 467, 468 (N.D.N.Y. 1994) ("The plaintiff's right to avoid the invasion of a mental examination must be balanced against defendant's right to a fair trial.").

III.   DISCUSSION

    A.   <u>Defendant has met his burden to demonstrate that plaintiff Ortiz's mental condition is "in controversy" and that good cause supports an order compelling a mental examination under Rule 35(a).</u>

As noted above, defendant bears the burden with respect to this motion. The operative complaint and the documents in the record demonstrate that Ortiz's mental condition is "in controversy" and that good cause supports an order compelling a mental examination under Federal Rule of Civil Procedure 35(a).

The allegations in the Third Amended Complaint related to Ortiz's claims and documents in the record support a conclusion that Ortiz's mental condition is "in controversy" under the Turner test. See Turner, 161 F.R.D. at 95. First, the Third Amended Complaint repeatedly alleges a claim of emotional distress, which is the threshold requirement under Turner. Each claim for relief contained in that complaint separately alleges that "[a]s a proximate result of Defendant's conduct, Plaintiff ORTIZ has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof." (See Third Am. Compl. ¶¶ 58, 63, 69, 75, 81, 86, 94.) In addition, the prayer for relief in the Third Amended Complaint seeks "damages for emotional distress,

---

[5] The undersigned acknowledges the Supreme Court's statement that there are situations where the pleadings alone are sufficient to meet the "in controversy" and "good cause" requirements of Rule 35. Schlagenhauf, 379 U.S. at 119. This case, where the operative complaint contains relatively generalized allegations of emotional distress, is not such a case.

6

humiliation, and mental anguish on all causes of action." (Id. at 33:22-23.)

Second, two of the five additional factors stated in Turner that relate to the "in controversy" requirement are present as to Ortiz. As an initial matter, the record indicates that Ortiz intends to offer expert witness testimony in support of her emotional distress claims.[6] See Ford, 179 F.R.D. at 580 (citing Turner, 161 F.R.D. at 95). In the briefing on this motion, and again at the hearing, plaintiffs' counsel indicated an intention at trial to offer the testimony of plaintiffs' treating physicians, including having them address the treatment of plaintiffs' emotional distress issues. (Joint Statement re Discovery Disagreement ("Joint Statement") at 4:1-7, Dkt. No. 33.)[7]

More compelling is that the documents in the record support a finding that Ortiz has alleged "unusually severe emotional distress," another factor from Turner that indicates that a party's mental condition is "in controversy." Ortiz claims that she has suffered emotional distress and resulting physical manifestations of that distress that go beyond "generalized insult, hurt feelings, and lingering resentment," and the effects of her emotional distress, as alleged, have significantly disrupted her work life and personal life. See Javeed, 218 F.R.D. at 178; see also Kob, 2009 WL 3706820 at *2-*3 (finding that a mental examination was appropriate where, among other things, "a rash of physical ailments caused by stress and depression [were] central to Plaintiff's damages claims"). In Ortiz's responses to defendant's interrogatories and in her initial disclosures, she claims that, as a result of defendant's conduct as alleged in the operative complaint, she has suffered and been treated for the following: damage to her teeth suffered due to clenching of her jaw, depression, anxiety, high blood pressure, migraine headaches, and chest

---

[6] The court is not able to rely on expert designations on this point because the parties' deadline for such designations has not yet passed. (See Dkt. No. 20 (expert designations and reports due 60 days prior to May 20, 2010 discovery cutoff).)

[7] The parties' Joint Statement is on the court's docket at entry number 33, and the related exhibits and amended exhibits filed by defendant and plaintiffs are on the court's docket at entries numbered 33, 34, 35, and 37.

pains. (Pl. Ortiz's Resp. to Interrog. 15, Def.'s Ex. 1 at 30-31; see Pls.' Initial Disclosures, Def.'s Ex. 8 at 19.) Moreover, Ortiz states in her interrogatory responses that, as a result of defendant's unlawful actions, she has "experienced feelings of humiliation, degradation, powerlessness, helplessness, frustration, anger, depression and anxiety . . . [,] trouble sleeping and . . . crying spells." (Pl. Ortiz's Resp. to Interrog. 16, Def.'s Ex. 1 at 32.) She further states that her physicians have prescribed, and she has taken, the following medications as a result of her conditions: Lorazepam for anxiety, Imitrex for migraine headaches, metoprolol succinate for high blood pressure, and Triamterene and HCTZ for resulting water retention.[8] (Pl. Ortiz's Resp. to Interrog. 15, Def.'s Ex. 1 at 31; see also Pl. Ortiz's Resp. to Interrog. 18, Def.'s Ex. 1 at 44 (describing non-prescription medications taken to alleviate Ortiz's physical symptoms of emotional distress).) In addition, Ortiz alleges that the physical manifestations of her emotional distress suffered "as a result of defendant's unlawful actions" required that she be: tested for a possible heart attack; admitted to a hospital overnight due to chest pains, high blood pressure, and breathing troubles; and that she be prescribed a dose of morphine.[9] (Id.) Notably, Ortiz alleges that these "feelings and symptoms have been persistent and ongoing" (Pl. Ortiz's Resp. to Interrog. 16, Def.'s Ex. 1 at 32), which district courts have found supports an order compelling a mental examination. See Kob, 2009 WL 3706820 at *2-*3 (collecting cases). It is hard to reach a conclusion other than that Ortiz's claims of emotional distress go beyond "garden-variety" and

---

[8] Plaintiffs attempt to negate Ortiz's use of a prescribed anti-anxiety medication, Lorazepam, by arguing that it was her primary care physician, rather than a psychiatrist, who prescribed her anti-anxiety medication and that Ortiz ceased taking that medication in July 2009. (Joint Statement at 14:15-17 (citing Ortiz Dep. Tr. at 230:23-231:11, Pls.' Ex. A).) However, regardless of which physician prescribed the medication, Ortiz's deposition testimony indicates that she took this medication for nearly five years. (See Ortiz Dep. Tr. at 230:23-231:11, Pls.' Ex. A.)

[9] Although Ortiz also met with an EAP counselor once in February 2008, the undersigned is hesitant to rely on, and thus does not rely on, Ortiz's single EAP session as the basis for ordering a mental examination given that finding otherwise might deter potential plaintiffs from seeking help through EAP programs. (Pl. Ortiz's Resp. to Interrog. 15, Def.'s Ex. 1 at 32.)

may be characterized as "unusually severe." Accordingly, defendant has met his burden to demonstrate that Ortiz's mental condition is "in controversy."

Third, good cause exists to grant defendant's motion. Based on the foregoing, Ortiz's mental condition is relevant to this action and defendant should be permitted to explore the nature and extent of the emotional distress alleged by Ortiz and against which defendant must defend. Ortiz is seeking damages for the cost of her medical treatment. (Pl. Ortiz's Resp. to Interrog. 17, Def.'s Ex. 1 at 33.) She is also seeking compensation for lost income "as a result of her emotional distress caused by defendant's unlawful actions."[10] (Id., Def.'s Ex. 1 at 33-44.) A mental examination could adduce specific facts relevant to Ortiz's claims and defendant's defenses in this action. See Ragge, 165 F.R.D. at 609. Moreover, given the extensive allegations of emotional distress, a mental examination may provide facts about Ortiz's alleged emotional distress not available through other evidence such as cold medical records and the cross-examination of treating physicians.[11] See Greenhorn v. Marriott Int'l, Inc., 216 F.R.D. 649, 652 (D. Kan. 2003); see also Ragge, 165 F.R.D. at 608.[12]

---

[10] The undersigned notes that Ortiz's claims for damages related to lost income due to emotional distress also supports that her emotional distress, as alleged, is "unusually severe" and supports the finding above related to the "in controversy" requirement of Rule 35(a).

[11] At the hearing on defendant's motion, defendant's counsel characterized the medical record disclosures as undetailed and "insufficient" to assist in developing a defense. The court does not have those records before it and, therefore cannot corroborate or rely on defense counsel's representations about the sufficiency of the records.

[12] In Ragge, the court stated:

> One of the purposes of Rule 35 is to "level the playing field" between parties in cases in which a party's physical or mental condition is in issue. "[G]ranting a request for a psychiatric examination pursuant to Rule 35 is to preserve [ ] the equal footing of the parties to evaluate the plaintiff's mental state. . . . ." A plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert. "Only if no additional relevant information could be gained by an examination of [plaintiff] should the motion for a psychiatric examination be denied."

Ragge, 165 F.R.D. at 608 (citations omitted and modifications in original).

1    Finally, the undersigned finds unpersuasive plaintiffs' argument that privacy rights derived from the California Constitution bar a federal court from ordering a mental examination pursuant to Rule 35(a) in a case premised on federal question jurisdiction. (See Joint Statement at 15-17.)  First, plaintiffs offer no compelling, mandatory, or persuasive authority for this proposition.[13]  Second, reliance on such privacy protections are at a minimum misplaced with respect to a mental examination when plaintiffs have: (a) put their mental condition at issue through extensive and detailed claims of emotional distress, (b) disclosed medical records to defendant (see Joint Statement at 15:4), and (c) suggested their intent to offer the testimony from their treating physicians regarding treatment sessions and potentially expert witnesses on the issue of emotional distress.  Without more, plaintiffs' claim is unavailing.

Defendant has met his burden on his motion to compel a mental examination as to Ortiz.  Accordingly, the undersigned will order that Ortiz attend and participate in a mental examination as described below.

B.  **Defendant has also met his burden to demonstrate that plaintiff Soto's mental condition is "in controversy" and that good cause supports an order compelling a mental examination under Rule 35(a).**

Whether to order a mental examination of plaintiff Soto presents a closer question.  However, the undersigned concludes that, as with plaintiff Ortiz, the operative complaint and the documents in the record demonstrate that plaintiff Soto's mental condition is "in controversy" and that good cause supports an order compelling a mental examination under Federal Rule of Civil Procedure 35(a).

With respect to the "in controversy" requirement and Turner's requirement that

---

[13] Plaintiffs's only authority in favor of applying State privilege law in this action, which is premised on federal question jurisdiction, is patently unpersuasive. (Joint Statement at 15.)  Plaintiffs rely on Federal Rule of Evidence 501, which provides that State law governs questions of privilege where State law provides the rule of decision as to a particular element of a claim or defense.  In addition, plaintiffs cite Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998), which states that "[i]n a federal action based on diversity of citizenship jurisdiction, state law governs privilege claims."  Neither authority supports plaintiffs' argument.

emotional distress be claimed, the Third Amended Complaint repeatedly alleges that Soto has suffered emotional distress as a result of defendant's alleged conduct.  Each of Soto's claims for relief separately allege that "[a]s a proximate result of Defendant's conduct, Plaintiff SOTO has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof."  (See Third Am. Compl. ¶¶ 100, 106, 112, 119, 124, 131.)  Moreover, the prayer for relief in the Third Amended Complaint, pled as to both plaintiffs, seeks "damages for emotional distress, humiliation, and mental anguish on all causes of action."  (Id. at 33:22-23.)

In addition, as with Ortiz, two of the five factors stated in Turner are satisfied here.  Material in the record implies that plaintiffs intend to call expert witnesses on the issue of emotional distress.  As discussed above, in the briefing on this motion and again at the hearing, plaintiffs' counsel indicated an intention at trial to offer the testimony of plaintiffs' treating physicians, including having them address the treatment of plaintiffs' emotional distress issues.  (See Def.'s Ex. 7 at 1; Joint Statement at 4:1-7.)

Although to a lesser extent than Ortiz, documents in the record support that Soto has also alleged "unusually severe emotional distress."  Soto claims that she has suffered emotional distress and resulting physical manifestations of that distress that go beyond "generalized insult, hurt feelings, and lingering resentment."  See Javeed, 218 F.R.D. at 178; see also Kob, 2009 WL 3706820 at *2-*3.  In Soto's responses to defendant's interrogatories, she states that, as a result of defendant's conduct, she has suffered and been treated for, feelings of depression, anxiety, and loss of sleep.  (Pl. Soto's Resp. to Interrog. 12, Def.'s Am. Ex. 2 at 20.)  She further states that she received six acupuncture treatments "to relieve the pain in my right shoulder, neck, and back due to [my] emotional distress as a result of defendant's unlawful actions."  (Id. at 21.)  Moreover, Soto states in her interrogatory responses that, as a result of defendant's unlawful actions, she has "suffered from feelings of humiliation, embarrassment, frustration, anger, depression, and anxiety," and has had trouble sleeping.  (Pl. Soto's Resp. to

11

Interrog. 13, Def.'s Am. Ex. 2 at 21.) Soto also alleges that "[t]hese feelings and symptoms have been persistent and ongoing" (id.), which district courts have found supports an order compelling a mental examination. See Kob, 2009 WL 3706820 at *2-*3. Soto also attended several counseling and/or therapy sessions, including EAP-related and non-EAP-related sessions, between September 2007 and February 2008. (Pl. Soto's Resp. to Interrog. 12, Def.'s Am. Ex. 2 at 20-21.) She further states that a physician prescribed, and she took on an apparently limited basis, the medication Zoloft for symptoms of emotional distress. (Pl. Soto's Resp. to Interrog. 12, Def.'s Am. Ex. 2 at 20; Soto Dep. Tr. at 219:12-220:15, Pls.' Ex. C at 4-5.)[14] Although Soto's emotional distress appears to have resulted in somewhat milder physical manifestations and disruptions to her work life and personal life relative to Ortiz, the undersigned is nonetheless persuaded that Soto's claims of emotional distress go beyond "garden-variety" and are "unusually severe" for the purpose of evaluating defendant's motion. Accordingly, defendant has met his burden to demonstrate that Soto's mental condition is "in controversy."

Finally, for reasons consistent with those stated above as to plaintiff Ortiz, good cause supports an order compelling a mental examination of Soto. Unlike Ortiz, Soto claims that she is not seeking damages for her medical expenses. (Joint Statement at 14:23-24.) This alleged factual difference does not alter undersigned's conclusion that good cause supports an order compelling Soto's mental examination.[15]

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion is granted;

2. On March 9, 2010, or on another date agreeable to the parties' counsel,

---

[14] Although Soto's interrogatory responses state that she was prescribed Soloft from "approximately September 27, 2007, to June of 2008," her deposition testimony indicates she may have taken the medication for a more limited time period. Id.

[15] For the same reasons identified above as to plaintiff Ortiz, the court finds Soto's privacy claims based on the California Constitution unpersuasive.

1 Plaintiffs Ortiz and Soto shall each attend and undergo mental examinations consistent with defendant's revised notices of mental examinations filed with the court on March 2, 2010 (Dkt. No. 35)[16];

3. In conducting the examinations, Dr. Polfliet shall in all respects exercise her professional judgment consistent with her professional and ethical obligations, including whenever practical or appropriate limiting inquiries into plaintiffs' respective psychological and mental condition before and after the acts alleged in the Third Amended Complaint to those inquiries necessary to elicit responses that have a bearing on the matters at issue in this litigation;

4. Counsel for defendant shall provide Dr. Polfliet with a copy of this order prior to the examinations;

5. The respective examinations shall not exceed eight hours in duration; and

6. For the reasons stated on the record at the hearing on defendant's motion, the examinations shall not be recorded.

**IT IS SO ORDERED.**

DATED: March 5, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[16] This order does not limit the parties' ability to agree to a different location or starting time than provided in the notices.