IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLGA G. ORTIZ and PATRICIA SOTO,

      Plaintiffs,

No. 2:08-cv-01326 LKK KJN

      v.

ORDER

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

      Defendant.

_____/

Presently before the court is defendant's motion for a "protective order limiting the extent of plaintiffs' questioning of Richard Matsuhiro and other United States Postal Service ("USPS") employees regarding a 1990 incident involving Mr. Matsuhiro and another USPS employee."[1] (Def.'s Statement in Supp. of Mot. for Protective Order at 1:22-25, Dkt. No. 52.) Specifically, defendant seeks the protective order on the grounds that "the requested information is irrelevant, will not lead to admissible evidence, is inadmissible pursuant to Federal Rule of Evidence 403 and 404(b), and on the basis that the disclosure of details will only unduly

---

[1] The protective order sought in defendant's Notice of Motion for Protective Order is narrower than that sought in defendant's statement in support of the motion, the former limiting the protective order to the questioning of only Mr. Matsuhiro. (Def.'s Notice of Mot. for Protective Order at 1:21-23, Dkt. No. 44.)

1

embarrass and annoy Mr. Matsuhiro." (Id. at 1:25-27.) Plaintiffs oppose defendant's motion and seek monetary sanctions pursuant to Federal Rule of Civil Procedure 30(d). (See Pls.' Statement in Opp'n to Def.'s Mot. for Protective Order at 8-10, Dkt. No. 46.)

The court heard this matter on its law and motion calendar on April 1, 2010. Assistant United States Attorney Jason S. Ehrlinspiel appeared on behalf of defendant. Attorney Jeremy A. Graham appeared on behalf of plaintiffs. The undersigned has fully considered the parties' briefs, oral arguments, and the record in this case and, for the reasons that follow, denies defendant's motion for a protective order and denies plaintiffs' request for sanctions.

I.  BACKGROUND

    A.  Relevant Factual Background

The factual background of this case is set forth in more detail in prior court orders (see Dkt. Nos. 29, 39), and thus will only be recounted here as necessary to the disposition of defendant's motion.

The operative complaint is plaintiffs' Third Amended Complaint. (Dkt. No. 22.) Relevant here,[2] plaintiff Ortiz alleges claims for: sexual harassment in violation of Title VII, 42 U.S.C. §§ 2000e et seq. ("Title VII"); racial harassment in violation of Title VII; disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. ("Rehabilitation Act"); failure to provide reasonable accommodation in violation of the Rehabilitation Act; failure to engage in the interactive process in violation of the Rehabilitation Act; failure to give full consideration to placement and advancement in violation of the Rehabilitation Act; and retaliation in violation of Title VII and the Rehabilitation Act. (See Third Am. Compl. ¶¶ 55-95.)

Ms. Ortiz alleges, in part, that in 2001 she was assigned to work in the Stockton Main Post Office, and that Richard Matsuhiro was her immediate supervisor. (Id. ¶ 9.) She

---

[2] This motion relates to discovery of Richard Matsuhiro's conduct. Review of the Third Amended Complaint indicates that plaintiff Soto's claims do not arise from Mr. Matsuhiro's alleged conduct.

further alleges that during various periods from 2002 through mid-2007, Mr. Matsuhiro regularly directed racially and sexually degrading comments at her and regularly subjected her to unwelcome sexual touchings. (See id. ¶¶ 12-19, 22-23.)

At the center of this discovery dispute is an incident that is alleged to have taken place between Mr. Matsuhiro and Renee Rendon, another USPS letter carrier, in and around 1990. Plaintiffs have submitted Ms. Rendon's declaration, which declares that Mr. Matsuhiro sexually assaulted her while she was delivering mail on her mail route, and that Ms. Rendon filed a sexual harassment grievance with USPS.[3] (See Rendon Decl. ¶¶ 2-9.)

Ms. Rendon's grievance resulted in a settlement agreement between Ms. Rendon and USPS management. (Def.'s Statement in Supp. of Mot. for Protective Order, Ex. 1.[4]) In exchange for Ms. Rendon's release of her claims, "Management" agreed, in part, that "Richard Matsuhiro will have total non-involvement in the complainant's postal career . . . ." (Id. at 1.) There is a potential dispute regarding the meaning of the terms of the settlement agreement in that plaintiffs contend, contrary to the language of the agreement, that it obligated USPS to preclude Mr. Matsuhiro from supervising *any* female letter carriers for his entire career, not just Ms. Rendon. (See Pls.' Statement in Opp'n to Def.'s Mot. for Protective Order at 3:14-17; see also Rendon Decl. ¶ 10; Madewell Decl. ¶ 5-6; Mejia Decl. ¶ 4; Fuson Decl. ¶ 3.)

In 2007, Ms. Ortiz contacted Ms. Rendon and asked whether Ms. Rendon would provide a statement in connection with Ms. Ortiz's EEO investigation. (Rendon Decl. ¶ 11.) Ms. Rendon provided such a statement as part of the EEO investigation. (Id. ¶ 13 & Ex. 1.)

---

[3] Plaintiffs have submitted the declarations of other current and former USPS employees—Randy Madewell, Robert Mejia, and Greg Fuson—who declare their knowledge of the incident between Ms. Rendon and Mr. Matsuhiro and the resulting discipline imposed on Mr. Matsuhiro. (See Dkt. Nos. 49, 50, 51.)

[4] Defendant submitted the settlement agreement as an exhibit without an accompanying declaration providing information about the authenticity of the document. The undersigned assumes that the settlement agreement is authentic for the sole purpose of evaluating defendant's motion for a protective order.

3

It also appears based on the submitted declarations that plaintiffs have had some difficulty acquiring a copy of the settlement agreement. Ms. Rendon was unable to procure this agreement from USPS in connection with making her EEO statement on Ms. Ortiz's behalf, and was apparently told by USPS that the document fell outside of USPS's document retention period. (See Rendon Decl. ¶ 12.) Another of Ms. Ortiz's declarants, Greg Fuson, attempted to obtain access to Mr. Matsuhiro's personnel file as president of a branch of the National Association of Letter Carriers, but the settlement agreement was not in the file. (Fuson Decl. ¶ 4.) Mr. Fuson also specifically requested a copy of the agreement from USPS, but was purportedly told that USPS no longer had a copy of the document. (Id. ¶ 5 & Ex. A.) As discussed below, however, defendant produced a copy of the settlement agreement in an effort to resolve the present motion. (Def.'s Statement in Supp. of Mot. for Protective Order at 2:13-16 & Ex. 1.) Defendant asserts that plaintiffs did not request this document through a request for production until March 19, 2010. (Id. at 2 n.1.)

        B.        <u>The Depositions and the Parties' Efforts to Meet & Confer</u>

On the basis of the text of e-mails submitted by plaintiffs in opposition to defendant's motion, it appears that the parties' counsel began scheduling depositions, including that of Mr. Matsuhiro, as early as September of 2009.[5] (Pls.' Index of Exs., Ex. F at 10.) In February 2010, the parties finally agreed that Mr. Matsuhiro's deposition would take place on March 24, 2010, and that the deposition of Josie Orozco, another witness in this case, would take place on March 25, 2010. (Id. at 15.)

Defendant filed his Notice of Motion for Protective Order on March 11, 2010, but did not file an application for an order shortening time so that the dispute could be resolved prior

---

[5] Plaintiffs did not submit with their exhibits a declaration regarding the authenticity of the documents. In addition, plaintiffs appear to have copied-and-pasted the text of e-mails onto pleading paper, rather than submit the actual printed e-mails. The undersigned assumes that the e-mail text is accurate for the sole purpose of evaluating defendant's motion for a protective order given that defendant has not objected to the same.

to the depositions. (Dkt. No. 44.) Review of the record indicates that defendant apparently raised the issue of the protective order for the first time on March 11, 2010, the same day he filed the present motion. (Pls.' Index of Exs., Ex. G at 19-20, Dkt. No. 47.) This issue was first raised on that date despite the fact that Ms. Rendon is listed in plaintiffs' initial disclosures, which were signed February 18, 2009, as a witness who would testify about "Matsuihiro's [*sic*] attempted rape of Renee Rendon in 1990 and USPS' knowledge of said conduct which would support Plaintiff Ortiz' first cause of action." (Pls.' Initial Disclosures at 13:20-22, Dkt. No. 33-4; see also Order, May 12, 2009, at 6 ("One of the persons identified for Ortiz is an individual alleging that Matsuhiro attempted to rape her."), Dkt. No. 29.) It also appears that defendant made no effort to meet and confer with plaintiffs' counsel between the date he filed his notice of motion, March 11, 2010, and Mr. Matsuhiro's March 24, 2010 deposition, except for communications the day of the deposition. (Ehrlinspiel Decl. ¶ 2, Dkt. No. 52-4.)

As related by defendant's counsel's declaration, Mr. Matsuhiro's deposition took place on March 24, 2010, but defendant's counsel instructed Mr. Matsuhiro not to answer questions soliciting details of the incident with Ms. Rendon, aside from a brief descriptions of the accusation of sexual harassment and the fact of resulting discipline. (Id. ¶ 3.) Defendant's counsel also instructed Ms. Orozco, a USPS employee with knowledge of the incident, not to provide details about the same.[6] (Id. ¶ 4.)

The parties' were required to file a "Joint Statement re Discovery Disagreement" with the court no later than seven days before the scheduled hearing, or March 25, 2010. See Local Rule 251(c). The parties, who have previously appeared before the undersigned regarding a discovery dispute (see Dkt. Nos. 38, 39), filed no such statement.

On March 25, 2010, plaintiffs' counsel filed a statement in opposition to defendant's motion for a protective order. (Dkt. No. 46.) Although not declared under penalty of

---

[6] On March 30, 2010, defendant lodged the entire rough draft transcripts of the depositions of Mr. Matsuhiro and Ms. Orozco. (Dkt. No. 54.)

5

1 perjury, plaintiffs' counsel declares that he had not received a draft of a proposed joint statement
2 from defendant's counsel as of the time of the filing of his statement. (Pls.' Statement in Opp'n
3 to Def.'s Mot. for Protective Order at 9:19-20, Dkt. No. 46.)

4       After plaintiffs' filed their opposition statement, defendant's counsel filed a
5 statement in support of defendant's motion and a declaration of attorney Jason Ehrlinspiel. (Dkt.
6 No. 52.) The declaration, which is not signed under penalty of perjury, addresses, generally and
7 with no documentation, defendant's counsel's attempts to meet and confer with plaintiffs'
8 counsel. Defendant's counsel declares, without specificity, that he "communicated with attorney
9 Jeremy Graham prior to filing the Notice of Motion for Protective Order." (Ehrlinspiel Decl. ¶
10 2.) He also declares that he attempted to meet and confer with plaintiffs' counsel prior to and
11 during the deposition of Mr. Matsuhiro on March 24, 2010. (Id.) He further declares that he
12 attempted to meet and confer with one of plaintiffs' attorneys on March 25, 2010. (Id.) Finally,
13 he declares that on March 25, 2010, the day that the joint statement regarding the discovery
14 disagreement was due, he offered a copy of the settlement agreement to plaintiffs' counsel in an
15 attempt to resolve the present discovery dispute. (Ehrlinspiel Decl. ¶ 6; see also Def.'s Statement
16 in Supp. of Mot. for Protective Order at 2:13-16 & Ex. 1.) Defense counsel's declaration does
17 not, however, specifically relate his efforts to resolve this dispute prior to filing the notice of
18 motion, nor does it recount any efforts to communicate with plaintiffs' counsel regarding
19 preparation of the joint statement required by Local Rule 251.

20       On March 26, 2010, Stephen M. Smith, an attorney for plaintiffs', filed a rebuttal
21 declaration under penalty of perjury, which contradicts, in part, the unsworn declaration of
22 attorney Jason Ehrlinspiel. (Dkt. No. 53.) The Smith declaration avers that "[a]lthough [Mr.
23 Ehrlinspiel and Mr. Smith] had brief discussions during the deposition [of Mr. Matsuhiro] about
24 how the deposition would proceed in light of defendant's motion for protective order, Mr.
25 Ehrlinspiel made no effort at this time to meet and confer with me on the issues raised in his
26 motion." (Smith Decl. ¶ 4.) Mr. Smith also declares that Mr. Ehrlinspiel's first attempts to meet

and confer occurred after 4:00 p.m. on March 25, 2010, after plaintiffs had filed their opposition statement. (Id. ¶ 5.) According to Mr. Smith, Mr. Ehrlinspiel offered to withdraw defendant's motion if plaintiffs agreed to limit their questioning of witnesses on the alleged assault of Ms. Rendon, and Mr. Ehrlinspiel also offered to produce the settlement agreement. (Id.)

II.     DISCUSSION

     A.     <u>Defendant has not met his burden to demonstrate good cause supporting the granting of a protective order.</u>

Federal Rule of Civil Procedure 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense." It further states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, there are some limits to these general discovery principles. Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[7] The party seeking the protective order has the burden "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) (citation omitted); see also Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" (citation and quotation marks omitted)). "'If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.'" Id. at 1063-64

---

[7] A motion seeking such relief "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Defendant's counsel has submitted an unsworn certification to that effect. (See generally Ehrlinspiel Decl.) In light of the record, the undersigned has concerns regarding whether defendant's counsel made serious, good faith efforts to meet and confer with plaintiffs' counsel to avoid court action. Nevertheless, the undersigned's decision to deny the motion to compel is not premised on defendant's counsel's efforts to meet and confer.

7

(quoting <u>Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1211 (9th Cir. 2002)).

At the outset, it bears noting that defendant has attempted to shift the burden to plaintiffs to demonstrate why the protective order should not issue. However, the party seeking the protective order bears the burden of demonstrating that the protective order is required. In addition, throughout defendant's statement in support of his motion, defendant appears to combine the distinct inquiries of whether evidence is ultimately *admissible* at trial and whether evidence is *discoverable*. Of course, the latter is a broader concept; for example, relevant evidence need not be inadmissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).

Defendant's primary contention is that plaintiffs should not be able to discover information about Mr. Matsuhiro's alleged assault of Ms. Rendon because the incident is remote in time, "highly personal and embarrassing" for Mr. Matsuhiro, and not relevant to plaintiffs' lawsuit. (<u>See</u> Def.'s Statement in Supp. of Mot. for Protective Order at 3:9-22 (asserting that plaintiff's only purpose for seeking details about the incident with Ms. Rendon is to embarrass and annoy Mr. Matsuhiro). Defendant affirmatively cites only Federal Rule of Civil Procedure 26(c)(1) in support of his argument, and relies on broad allegations of embarrassment and annoyance in supporting his motion. The undersigned concludes that defendant has not demonstrated good cause, i.e., particularized harm, in support of his motion for a protective order, especially given that the information sought by plaintiffs is relevant and discoverable under the circumstances of this case.

Plaintiffs correctly note that in a hostile work environment case an employer may raise a "reasonable care" affirmative defense to vicarious liability for a supervisor's harassing conduct; this defense is premised on the Supreme Court's decisions in <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998), and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998). <u>See</u> <u>Craig v. M & O Agencies, Inc.</u>, 496 F.3d 1047, 1055 (9th Cir. 2007). Generally stated, the

1  Ellerth/Faragher defense provides that "[w]hen no 'tangible employment action' (such as firing
2  or demotion) is taken, an employer may avoid liability . . . if it shows by the preponderance of the
3  evidence '(a) that the employer exercised reasonable care to prevent and correct promptly any
4  sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take
5  advantage of any preventive or corrective opportunities provided by the employer or to avoid
6  harm otherwise.'"  Craig, 496 F.3d at 1055 (citing Faragher, 524 U.S. at 807).

7          Here, defendant has raised an Ellerth/Faragher defense. (See Def.'s Answer to
8  Third Am. Compl. at 13:14-18, Dkt. No. 23.)  In his fourteenth affirmative defense, defendant
9  alleges: "Defendant exercised reasonable care to prevent and correct any harassing conduct in the
10 workplace and Plaintiffs failed to take advantage of opportunities or procedures afforded by the
11 Defendant to prevent or correct any prohibited activities or conduct as alleged in Plaintiffs' Third
12 Amended Complaint."  (Id.)  Thus, plaintiffs are entitled to discover information relevant to
13 defendant's notice of Mr. Matsuhiro's alleged assault of another USPS employee that took place
14 while that employee was conducting USPS business and, given such notice, what steps defendant
15 took to prevent the conduct at issue here.  Whether such evidence is ultimately admissible is a
16 question for a future proceeding.

17         The Ninth Circuit Court of Appeals has acknowledged that evidence of an
18 employer's notice of the accused harasser's prior conduct has probative value in a sexual
19 harassment case, even when the prior conduct is remote in time.  In Tennison v. Circus Circus
20 Enterprises, Inc., the court affirmed the district court's exclusion of evidence that the accused
21 harasser had harassed two other employees in the past.  244 F.3d 684, 689-90 (9th Cir. 2001).
22 The district court had concluded that, pursuant to Federal Rule of Evidence 403, the probative
23 value of such evidence was outweighed by its prejudicial effect.  Id. at 689.  In affirming the
24 district court, the Court of Appeals noted that the probative value of such remote-in-time
25 evidence not involving the plaintiff was further diminished by the fact that there had been several
26 more recent incidences of alleged harassment of other employees by the accused harasser.

Despite affirming the district court's decision based on the abuse of discretion standard of review, the court noted that such evidence of prior harassment was probative as proof that management had early notice of the accused harasser's improper conduct but failed to take adequate remedial measures because it gave management "at least constructive notice, if not actual notice," that the accused harasser was a "repeat offender."[8] Id. at 689-90.

The Seventh Circuit Court of Appeals has also held that an accused harasser's conduct with other employees not involved in the action is probative of an employer's notice of the harasser's prior misconduct. See Smith v. Sheahan, 189 F.3d 529, 533-34 (7th Cir. 1999). In Smith v. Sheahan, the court held that evidence of a county jail guard's harassment of co-workers at the jail was relevant to demonstrating that a hostile work environment existed. Id. at 534 (citing Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1144 (7th Cir. 1997)). Here, Ms. Ortiz has alleged the existence of a hostile work environment (e.g., Dkt. No. ¶¶ 56, 57) and, under the circumstances here, should be permitted to seek discovery of Mr. Matsuhiro's prior conduct.

Defendant's offer to provide plaintiffs with the settlement agreement on the day the parties joint statement was due does not persuade the undersigned that a protective order should issue. That document alone does not reveal all discoverable evidence related defendant's knowledge of Mr. Matsuhiro as an alleged repeat offender. Whether or not some of the evidence is determined to be inadmissible in future proceedings, plaintiffs should be able to discover the extent of defendant's knowledge of Mr. Matsuhiro's alleged behavior, which entails discovery about the facts that gave rise to the settlement agreement. Furthermore, the exact meaning of the settlement agreement is uncertain. While the terms of the settlement agreement purport to limit

---

[8] The undersigned finds plaintiffs' reliance on Griffin v. City of Opa-Locka, 261 F.3d 1295 (11th Cir. 2001), unpersuasive. In Griffin, the Eleventh Circuit Court of Appeals discussed prior acts of harassment by the city manager at issue in the context of potential Section 1983 municipal liability under Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978). See Griffin, 261 F.3d at 1315. The present case implicates a different legal showing than is required for a Monell claim, and thus Griffin is distinguishable for the purpose of evaluating defendant's motion.

Mr. Matsuhiro's supervision with respect to only Ms. Rendon, plaintiffs' declarations suggest that the limitations placed on Mr. Matsuhiro might have been intended to be much broader. (Compare Def.'s Statement in Supp. of Mot. for Protective Order, Ex. 1, with Rendon Decl. ¶ 10, Madewell Decl. ¶ 5-6, Mejia Decl. ¶ 4, and Fuson Decl. ¶ 3.)  The parties might need to conduct discovery on this issue as it relates to defendant's notice of Mr. Matsuhiro's behavior and steps taken to prevent harassing conduct, as suggested by defendant's fourteenth affirmative defense.

Defendant also argues that discovery of the details of the alleged assault should not be discoverable because they would constitute inadmissible character evidence under Federal Rule of Evidence 404(b).  (See Def.'s Statement in Supp. of Mot. for Protective Order at 3:23-4:4.)  Defendant offers no authority in support of this argument other than Rule 404(b) itself.  As noted above, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The ultimate admissibility of the evidence sought is not at issue at this juncture, and defendant may challenge admissibility in a future proceeding.

Finally, defendant's argues that the court should grant the protective order because plaintiffs can simply get whatever discovery it needs regarding Mr. Matsuhiro's alleged assault against Ms. Rendon from Ms. Rendon.  (Def.'s Statement in Supp. of Mot. for Protective Order at 4:19-24.)  This argument is entirely unavailing.  Federal Rule of Civil Procedure 26(b) does not limit plaintiffs to one source of discovery, and defendant cites no authority to the contrary. Indeed, defendant's argument in this regard is wholly unsupported by legal authority.

In short, defendant has not met his burden to demonstrated good cause in support of a protective order.  Accordingly, defendant's motion will be denied.

B.   Plaintiffs' Are Not Entitled to Sanctions.

Plaintiffs seek sanctions on the grounds that defendant's counsel: (1) directed the deposition witnesses not to answer questions regarding Mr. Matsuhiro's prior conduct without a legal basis for doing so; (2) failed to bring the present motion in a timely fashion in order to

avoid having to schedule a second deposition of Mr. Matsuhiro; and (3) failed to meet his meet-and-confer obligations under Local Rule 251.  (See Pls.' Statement in Opp'n to Mot. for Protective Order at 8-10.)  They seek sanctions as follows: (a) $6,187.00 in sanctions for plaintiffs' counsel's time opposing defendant's motion, including travel time and time spent at the hearing, for a total of 26.9 hours of time at a rate of $230.00 per hour; (2) a prospective order for additional sanctions for the cost of a second deposition of Mr. Matsuhiro, including the cost of a court reporter, a videographer, and the cost of securing a deposition location for the additional deposition; and (3) a prospective order for unspecified amount of fees for the cost of Mr. Matsuhiro's second deposition at Mr. Smith's billable rate of $515.00 per hour.  (Id. at 10.)  Defendant did not respond to this request for sanctions in writing, but, at the hearing on defendant's motion, argued that plaintiffs' request for sanctions, which were not brought through a noticed motion, is not properly before the court.[9]

There is no doubt that defendant's counsel could have taken steps to resolve his motion for a protective order prior to Mr. Matsuhiro's and Ms. Orozco's respective depositions, e.g., seeking an order shortening time, but chose not to do so.  Nevertheless, the undersigned concludes that defendant's counsel did not lack a good faith basis for bringing this motion for a protective order.  Accordingly, the undersigned will deny plaintiffs' request for sanctions.[10]

Regarding the specific sanctions requests, the undersigned denies plaintiffs' request for attorney's fees for the time spent opposing the motion for a protective order.  Plaintiffs' counsel would have expended time opposing the motion even if defendant's counsel had noticed the hearing for a date prior to the depositions at issue.  In addition, the undersigned will not award prospective attorney's fees related to the subsequent depositions of Mr. Matsuhiro

---

[9] Defendant's counsel's declaration also contends that there was a good faith basis for his conduct.  (Ehrlinspiel Decl. ¶ 5.)

[10] The undersigned also notes that plaintiffs should have brought their request for sanctions through noticed motion.

and Ms. Orozco—plaintiffs' counsel would have spent that time questioning Mr. Matsuhiro and Ms. Orozco in their respective first depositions. If appropriate, however, plaintiffs may file a motion for costs as permitted under the Federal Rules of Civil Procedure following any subsequent deposition of Mr. Matsuhiro and Ms. Orozco.

III. CONCLUSION

        For the foregoing reasons, IT IS HEREBY ORDERED that:

    1.    Defendant's motion for a protective order is denied;

    2.    Plaintiffs' request for sanctions is denied.

**IT IS SO ORDERED.**

DATED: April 1, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE